1   DAVID P. NEMECEK, JR. (State Bar No. 194402)
    david@fortress-law.com
2   THE FORTRESS LAW FIRM, INC.
    50 California Street, Suite 1500
3   San Francisco, CA 94111
    Telephone: (415) 277-5400
4   Facsimile: (415) 723-7370
    Attorneys for Plaintiff ABDULAZIZ AL MUNIFI
5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10              SOUTHERN DIVISION – SANTA ANA

11

12  ABDULAZIZ AL MUNIFI,                    Case No.

13          Plaintiff,                       **COMPLAINT FOR FRAUD, FRAUDULENT
                                             CONCEALMENT, AIDING AND
14      v.                                   ABETTING FRAUD, CONVERSION,
                                             BREACH OF FIDUCIARY DUTY, UNJUST
15  SUHAD ABRAHAM AKA SUE PRESTON            ENRICHMENT, FOR MONEY HAD AND
    AKA SUE ABRAHAM PRESTON, SAMIR           RECEIVED, VIOLATION OF BUSINESS
16  ABRAHAM AKA SAM ABRAHAM, S & S           AND PROFESSIONS CODE SECTION
    COASTAL FOODS, LLC, a Delaware           17200, ACCOUNTING, SPECIFIC
17  limited liability company and REALTY     PERFORMANCE, INJUNCTIVE RELIEF
    ONE GROUP, INC., a California            AND FOR PUNITIVE DAMAGES**
18  corporation,
                                             **DEMAND FOR JURY TRIAL**
19          Defendants.

20

21

22              **NATURE OF THE ACTION AND OVERVIEW**

23      1.      Plaintiff Abdulaziz al Munifi ("Plaintiff") brings this action to recover almost $2.1

24  million in cash that was stolen from him by means of a fraudulent conspiracy perpetrated by the

25  Defendants.  Plaintiff further seeks a judgment for specific performance compelling Defendant

26  Suhad Abraham to convey all of her rights, interests and title to three properties located in Laguna

27  Hills and Mission Viejo that she acquired from Plaintiff by means of fraud and deceit as well as

28  an injunction prohibiting Suhad Abraham from damaging, encumbering or impairing those

COMPLAINT

properties before she is compelled to transfer title to those properties to him.

2. Plaintiff further seeks a judgment for disgorgement of all profits made by Defendants using funds that were misappropriated from him, including all profits earned by Defendant S & S Coastal Foods, LLC, which acquired eleven Jack in the Box franchises using funds that Defendant Suhad Abraham misappropriated from Plaintiff with substantial assistance from Defendant Samir Abraham.

3. This case is a cautionary tale of the consequences of entering into a romantic relationship with an extremely dishonest and deceitful person who uses that relationship to abuse her lover's trust and manipulate him in order to misappropriate almost $2.1 million in cash as well as title to three properties that are now worth over $3.6 million.

4. In late 2010, Defendant Suhad Abraham was in the depths of personal and financial despair.  Her then-husband filed a petition to dissolve their marriage in Orange County Superior Court earlier that year in August.  She was faced with ongoing financial difficulties, her career as a real estate agent was stalled and was not generating sufficient income to enable her to become financially self-sufficient, and she was approaching the age of 50.  Rather than pull herself up by her bootstraps by means of hard work, she hatched a plan to find a wealthy, generous gentleman online, gain his trust by way of a romantic relationship and extract as much cash from him as she could.  The man she found was the Plaintiff, Abdulaziz al Munifi.

5. Plaintiff and Suhad Abraham met online in January 2011 and began a romantic relationship shortly thereafter.  Over the course of over five years, Suhad Abraham induced Plaintiff to transfer well over $250,000 to her by repeatedly requesting financial support and complaining about her station in life.

6. Suhad Abraham had every reason to be grateful for the generosity Plaintiff showed to her to enable her to become self-sufficient, but she was not.  Instead, she saw an opening to use her romantic relationship with Plaintiff to engage in an elaborate scheme to defraud him, which she began in earnest in December 2016.

2

COMPLAINT

**JURISDICTION**

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

8.    This Court has personal jurisdiction over all of the Defendants pursuant to Fed.R.Civ.P. 4(k)(1)(A) and California Code of Civil Procedure section 410.10 because the Defendants' contacts with the State of California are continuous and systematic, and those contacts include activity that gave rise to this lawsuit.  Moreover, the exercise of jurisdiction over the Defendants by this Court would not offend traditional notions of fair play and substantial justice.

**VENUE**

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in the Central District of California.  At all relevant times, Defendants conducted substantial business and committed violations of law through a series of acts and omissions perpetrated in this District.

**THE PARTIES**

10.   Plaintiff Abdulaziz al Munifi is an individual residing in Riyadh in the Kingdom of Saudi Arabia.

11.   Defendant Suhad Abraham is an individual residing in Mission Viejo, California.  Suhad Abraham is also known as Sue Abraham, Sue Preston and Sue Abraham Preston.  Suhad Abraham is a real estate agent licensed by the California Department of Real Estate and is employed by Defendant Realty One Group, Inc.  Suhad Abraham is the sister of Defendant Samir Abraham.

12.   Defendant Samir Abraham aka Sam Abraham is an individual residing in San Clemente, California.  Defendant Samir Abraham is the brother of Defendant Suhad Abraham.

13.   Defendant S & S Coastal Foods, LLC ("S & S Coastal Foods") is a limited liability company organized under the laws of the State of Delaware with its principal place of

3

COMPLAINT

business in San Clemente, California.  S & S Coastal Foods owns and operates eleven Jack in the Box fast food franchises throughout Orange County and, as set forth in more detail below, was capitalized with funds that Suhad Abraham misappropriated from Plaintiff by means of fraud and deceit.  Samir Abraham owns 51% of the membership units of S & S Coastal Foods and Suhad Abraham owns 49% of the membership units of S & S Coastal Foods.  Plaintiff alleges upon information and belief that Samir Abraham and Suhad Abraham are both managers of S & S Coastal Foods as that term is defined in California Corporations Code section 17001(a).  Both Samir Abraham and Suhad Abraham have the ability to control the operations of S & S Coastal Foods as its managers.

14.     Defendant Realty One Group, Inc. ("Realty One Group") is a corporation that is organized under the laws of the State of California with its principal place of business in Laguna Niguel, California.  Realty One Group is a real estate broker licensed by the California Department of Real Estate.  Realty One Group is the employer of Defendant Suhad Abraham.

## **GENERAL ALLEGATIONS**

15.     Plaintiff and Suhad Abraham met online in January 2011, just months after Suhad Abraham's then-husband Scott Preston filed a petition to dissolve their marriage in Orange County Superior Court.  Plaintiff and Suhad Abraham first met in person in May 2011 and began a romantic relationship shortly thereafter.

16.     In May 2016, Plaintiff and Suhad Abraham participated in a marriage ceremony in a mosque in Orange County.  They did not obtain a marriage license in advance of the ceremony. The ceremony in the mosque did not create a lawful marriage or domestic partnership between Plaintiff and Suhad Abraham and they never entered into a lawful marriage or domestic partnership.  However, Suhad Abraham frequently referred to Plaintiff as her spouse or her husband, referred to herself as "Mrs. Aziz" and claimed that she would change her surname to "al Munifi," which is Plaintiff's surname.  She did so as part of her scheme to manipulate Plaintiff, gain his trust and confidence and eventually defraud him.

17.     From 2011 to 2016, Suhad Abraham frequently complained to Plaintiff regarding

4

her finances, stated that she was not earning sufficient income to support herself and her son Jasem Preston and repeatedly requested that Plaintiff provide her with financial assistance. Plaintiff transferred well over $250,000 from 2011 to 2016 to Suhad Abraham in response to those requests.

18.     As their romantic relationship progressed and Suhad Abraham gained Plaintiff's trust and confidence as well hundreds of thousands of dollars of his money, she realized that she could use the romantic relationship she had with Plaintiff to manipulate him and defraud him on a much larger scale.  She hatched a plan to do so in or before December 2016.

19.     For several years during their romantic relationship, Suhad Abraham would send videos to Plaintiff of couples who "flip" residential properties, repeatedly expressed her interest in doing so and assured Plaintiff that she would use her expertise as a real estate agent to assist him with earning a profit "flipping" residential properties.  "Flipping" properties involves the purchase of residential real property as a short-term investment, performing immediate renovations to the property and reselling the property at a profit within a few months after the purchase.

20.     In December 2016, Suhad Abraham began discussing a business opportunity with Plaintiff concerning the flipping of two investment properties located at 25741 Lone Acres Lane in Laguna Hills, California (the "Lone Acres Property") and 26059 Blascos in Mission Viejo, California (the "26059 Blascos Property").  Suhad Abraham stated to Plaintiff that he should purchase the Lone Acres Property and the 26059 Blascos Property, remodel them and resell them at a profit.  Suhad Abraham falsely stated to Plaintiff that she would assist him with remodeling and reselling the Lone Acres Property and the 26059 Blascos Property and would use her expertise as a licensed real estate agent in doing so.

21.     Prior to December 2016, Plaintiff had no experience with purchasing real estate investments in the United States.  He relied entirely upon Suhad Abraham's professed expertise as a real estate agent to select the investment properties that he purchased, navigate the process of completing the purchase from making an offer through the close of escrow and remodel the

COMPLAINT

properties to prepare them for sale.

22.     Unbeknownst to Plaintiff, Suhad Abraham had no intention of assisting him with the remodeling and resale of the Lone Acres Property or the 26059 Blascos Property.  Instead, she planned to defraud Plaintiff by using false pretenses to induce him to transfer title to those properties to her.

23.     Escrow closed for Plaintiff's purchase of the Lone Acres Property on December 16, 2016.  The purchase price for the Lone Acres Property was $1.4 million.  A true and correct copy of the grant deed for the transfer of the Lone Acres Property to Plaintiff that was recorded on December 16, 2016 is attached as Exhibit A and is incorporated herein by reference.

24.     Escrow closed for Plaintiff's purchase of the 26059 Blascos Property on December 23, 2016.  The purchase price for the 26059 Blascos Property was $425,000.  A true and correct copy of the grant deed for the transfer of the 26059 Blascos Property to Plaintiff that was recorded on December 23, 2016 is attached Exhibit B and is incorporated herein by reference.

25.     In July 2017, Suhad Abraham began discussions with Plaintiff concerning a business opportunity to purchase five Jack in the Box franchises in Orange County.  Suhad Abraham further represented to Plaintiff that each franchise would generate monthly profits of $10,000 beginning in October 2017.

26.     Suhad Abraham represented to Plaintiff that Jack in the Box required that its franchises be owned and operated by a United States citizen and that Plaintiff therefore was not eligible to own and operate those franchises because he is not a United States citizen.  Suhad Abraham proposed to Plaintiff that he finance the purchase of the Jack in the Box franchises, that she would operate them and that ownership of the franchises would initially be in her name, although Plaintiff would be the rightful owner of the franchises.

27.     On July 28, 2017, Samir Abraham sent an email to Plaintiff by which he forwarded an unsigned draft of a letter of intent from Reynold W. Forsum to Suhad Abraham for the purchase of five Jack in the Box franchises in the amount of $1,937,299.  Later that day, Samir Abraham forwarded another version of that letter of intent on Jack in the Box's corporate

6

letterhead with Reynold W. Forsum's signature.

28.     Plaintiff participated in a conference call with Suhad Abraham and Samir Abraham shortly after he received the letters of intent described above.  During that conversation, Samir Abraham encouraged Plaintiff to purchase the five Jack in the Box franchises that are the subject of the letters of intent.  Samir Abraham further stated during that conversation that he was in the restaurant industry and that the franchises were a good investment.

29.     Unbeknownst to Plaintiff, Samir Abraham and Suhad Abraham formed S & S Coastal Foods, LLC as a limited liability company organized under the laws of the state of California on July 17, 2017.  The only members of that entity were Samir Abraham and Suhad Abraham.

30.     S & S Coastal Foods was formed to own and operate the five Jack in the Box franchises that Suhad Abraham and Samir Abraham discussed with Plaintiff in July and August 2017.  Samir Abraham and Suhad Abraham never made Plaintiff aware of the fact that they formed S & S Coastal Foods, concealed its existence from him and used the company as part of their scheme to defraud Plaintiff.

31.     On July 29, 2017, Suhad Abraham signed the letter of intent with Reynold W. Forsum for the purchase of five Jack in the Box franchises in Orange County for $1,937,299.

32.     Jack in the Box requires purchasers of its franchises to have a minimum net worth of $1.5 million and liquid capital of at least $750,000.  Neither Suhad Abraham nor Samir Abraham met the minimum net worth or liquidity requirements imposed by Jack in the Box for the purchase of a franchise.  In July 2017, Suhad Abraham requested that Plaintiff transfer title to the Lone Acres Property and the 26059 Blascos Property to her so that she could show Jack in the Box that she met the minimum required net worth and liquid capital requirements for the purchase of the five Jack in the Box franchises.

33.     Beginning in July 2017, Plaintiff began requesting that Suhad Abraham draft a written agreement that memorialized their agreements that Plaintiff was the rightful owner of the 26059 Blascos Property and the Lone Acres Property, that title to those properties would be

COMPLAINT

transferred back to him after the purchase of the Jack in the Box franchises was completed and that he would be the effective owner of the Jack in the Box franchises.  Suhad Abraham repeatedly and falsely represented that she would draft that agreement, but she had no intention of ever doing so as part of her scheme to defraud Plaintiff.

34.     Suhad Abraham desired to use the fact that the agreements she reached with Plaintiff concerning the temporary transfer of title to the Lone Acres Property and the 26059 Blascos Property as well as ownership of the Jack in the Box franchises were not memorialized in writing in order to falsely claim in the future that she is the rightful owner of those properties as well as the five Jack in the Box franchises that she purchased with funds she obtained from Plaintiff by means of fraud.

35.     Samir Abraham and Suhad Abraham knew that Plaintiff lived in Riyadh and did not travel to the United States frequently, which made it much easier for them to fraudulently conceal their plan to purchase the Jack in the Box franchises using funds they misappropriated from him.

36.     On August 2, 2017, Plaintiff wired $1,937,299 to Suhad Abraham for the purchase of the five Jack in the Box franchises.

37.     On August 4, 2017, Suhad Abraham forwarded pro forma financial statements to Plaintiff that purportedly reflected the projected revenue, expenses and profits for the Jack in the Box franchises.

38.      On August 15, 2017, Plaintiff executed quitclaim deeds to transfer title to the Lone Acres Property and the 26059 Blascos Property to Suhad Abraham in order to facilitate the purchase of the five Jack in the Box franchises.  A true and correct copy of the quitclaim deed that Plaintiff executed to transfer title to the Lone Acres Property to Suhad Abraham is attached hereto as Exhibit C and is incorporated herein by reference.  A true and correct copy of the quitclaim deed that Plaintiff executed to transfer title to the 26059 Blascos Property to Suhad Abraham is attached hereto as Exhibit D and is incorporated herein by reference.

39.     Plaintiff is informed and believes that Suhad Abraham purchased five Jack in the

8

Box franchises from Reynold W. Forsum in or around August 2017 using the funds Plaintiff wired to her on August 2, 2017.  Plaintiff is further informed and believes that Suhad Abraham transferred ownership of the five Jack in the Box franchises she purchased from Reynold W. Forsum to S & S Coastal Foods.

40.     Beginning in August 2017, Suhad Abraham concealed from Plaintiff the fact that she purchased the five Jack in the Box franchises and deceived him by making misrepresentations designed to lead him to believe that the purchase of the franchises had not occurred and was still under consideration.

41.     From January 2018 through March 2018, Plaintiff requested updates from Suhad Abraham concerning the status of the purchase of the five Jack in the Box franchises.  Plaintiff believed at that time that the purchase of the franchises had not occurred and had no reason to believe otherwise.  Suhad Abraham repeatedly concealed the fact from Plaintiff that she purchased five Jack in the Box Franchises in August 2017 and transferred ownership of those franchises to S & S Coastal Foods.

42.     In July 2018, Suhad Abraham falsely represented to Plaintiff that Jack in the Box would only agree to allow her to acquire eleven franchises and would not agree to allow her to acquire only five franchises.  Suhad Abraham requested that Plaintiff transfer additional funds to her to fund the purchase of eleven Jack in the Box franchises.  Plaintiff refused to do so.

43.     Beginning in July 2018, Plaintiff repeatedly stated to Suhad Abraham that the Lone Acres Property needed to be renovated and sold so that he could recoup the funds he invested for the purchase of that property as well as any profit from the sale of that property.  Plaintiff also requested in July 2018 that Suhad Abraham return the funds that he wired to her on August 2, 2017 for the purchase of the five Jack in the Box franchises.

44.     Suhad Abraham refused to return the funds Plaintiff wired to her on August 2, 2017 and refused to take any steps to renovate and sell the Lone Acres Property during the second half of 2018 in response to Plaintiff's repeated requests that she do so.

45.     From August 2018 through December 2018, Plaintiff continued to request

9

COMPLAINT

information from Suhad Abraham concerning the purchase of the five Jack in the Box franchises. Suhad Abraham was evasive and refused to provide the information Plaintiff requested and actively concealed the fact that she purchased five Jack in the Box franchises from Reynold W. Forsum using the funds Plaintiff wired to her on August 2, 2017.

46.     Suhad Abraham and Samir Abraham took several acts in furtherance of their scheme to defraud Plaintiff after he refused to transfer additional funds to Suhad Abraham in July 2018 for the purchase of the additional six Jack in the Box Franchises they wished to acquire, as set forth in more detail below.

47.     Unbeknownst to Plaintiff, on December 7, 2018, Samir Abraham and Suhad Abraham formed a limited liability company known as S & S Coastal Foods, LLC that is organized under the laws of the State of Delaware.  Plaintiff is informed and believes that in December 2018, Defendants Samir Abraham and Suhad Abraham transferred ownership of the five Jack in the Box franchises that Suhad Abraham purchased from Reynold W. Forsum from the entity known as S & S Coastal Foods, LLC that they formed under the laws of the State of California to Defendant S & S Coastal Foods, LLC, which is the limited liability company they formed under the laws of the State of Delaware.

48.     On December 10, 2018, Samir Abraham filed a Certificate of Cancellation with the California Secretary of State to dissolve the limited liability company named S & S Coastal Foods, LLC that he formed under the laws of the State of California.

49.     On December 26, 2018, Defendant S & S Coastal Foods, LLC registered as a foreign limited liability company with the California Secretary of State.

50.     In December 2018, Samir Abraham, Suhad Abraham and Defendant S & S Coastal Foods lacked sufficient capital to purchase the additional six Jack in the Box franchises they wished to acquire.  Suhad Abraham then concocted another scheme to defraud Plaintiff with the knowledge and approval of Samir Abraham in order to obtain the additional capital that Defendant S & S Coastal Foods needed in order to purchase more Jack in the Box franchises.

51.     In November 2018, Suhad Abraham approached Plaintiff and falsely represented

10

COMPLAINT

that her friend Lori Sullivan's partner Talal placed a bid for the purchase of a condominium located at 25917 Blascos #105 in Mission Viejo, California (the "25917 Blascos Property") and that she did not want Lori Sullivan's partner to acquire the 25917 Blascos Property.  Suhad Abraham stated that Plaintiff should purchase the condominium as an investment and "flip" it, and that she wished to live in the condominium until it was remodeled and sold because it is located near the residence of Suhad Abraham's mother.  Suhad Abraham then began pressuring Plaintiff to wire funds to her to facilitate the acquisition of the 25917 Blascos Property in her name.

52.    On November 20, 2018, Suhad Abraham falsely stated to Plaintiff that she would list the 26059 Blascos Property for sale immediately after the escrow for the purchase of the 25917 Blascos Property closed, and that she would transmit the proceeds she received from the sale of the 26059 Blascos Property to Plaintiff.

53.    Plaintiff is informed and believes that Lori Sullivan's partner Talal never placed a bid to purchase the 25917 Blascos Property.  Suhad Abraham concocted that falsehood in order to create a sense of urgency to convince Plaintiff to wire funds to her immediately for the purchase of the 25917 Blascos Property.

54.    The acquisition of the 25917 Blascos Property was part of Suhad Abrahm's scheme to defraud plaintiff.  Suhad Abraham wished to purchase the 25917 Blascos Property and take title to the property in her name only in order to obtain additional funds by drawing equity out of that property as well as the Lone Acres Property without Plaintiff's knowledge or consent.  Moreover, Suhad Abraham never intended to sell the 26059 Blascos Property after the close of the purchase of 25917 Blascos Property and she has never attempted to do so.

55.    Plaintiff agreed to the purchase of the 25917 Blascos Property with the understanding based upon representations made by Suhad Abraham that the condominium would be remodeled and resold within a relatively short time frame, that he would effectively be the owner of the property, that he would be entitled to the profits from the sale of the property, that Suhad Abraham would sell the 26059 Blascos Property immediately after the escrow for the

11

COMPLAINT

purchase of the 25917 Blascos Property closed and that she would send the proceeds from that sale to Plaintiff.  On January 10, 2019, Plaintiff sent $423,000 to Suhad Abraham via wire transfer, which was the purchase price for the 25917 Blascos Property.

56.     Suhad Abraham instructed the seller of the 25917 Blascos Property to transfer title to the property to herself and not Plaintiff.  Escrow closed for the purchase of the 25917 Blascos Property on January 15, 2019.  A true and correct copy of the grant deed that Donald Newton, the seller of the 25917 Blascos Property, issued to Suhad Abraham on January 3, 2019 is attached hereto as <u>Exhibit E</u> and is incorporated herein by reference.  The deed was recorded on January 15, 2019.

57.     In February 2019, Suhad Abraham obtained a hard money loan from Waterfall Bridge Capital, LLC in the amount of $1.35 million without Plaintiff's knowledge or consent. That hard money loan is secured by the Lone Acres Property and the 25917 Blascos Property by way of a deed of trust issued by Suhad Abraham to Waterfall Bridge Capital, LLC that is recorded against those properties.  A true and correct copy of that deed of trust is attached hereto as <u>Exhibit F</u> and is incorporated herein by reference.

58.     Suhad Abraham concealed from Plaintiff the fact that she obtained the hard money loan described in the paragraph above and never disclosed the fact that she obtained that loan to him.

59.     Plaintiff is informed and believes that Suhad Abraham and Samir Abraham used the $1.35 million in funds that Suhad Abraham obtained from the hard money loan described above to fund the purchase of six additional Jack in the Box franchises, all of which are now owned and operated by Defendant S & S Coastal Foods.

60.     In April 2019, Suhad Abraham continued to attempt to defraud Plaintiff by falsely representing that the transaction involving the purchase of the Jack in the Box franchises would not close unless she agreed to acquire eleven franchises.  Suhad Abraham continued to request that Plaintiff wire funds to her for the purchase of those six additional franchises.  In so doing, Suhad Abraham fraudulently concealed from Plaintiff the fact that S & S Coastal Foods acquired

COMPLAINT

five Jack in the Box franchises in or around August 2017 as well as an additional six Jack in the Box franchises in or around February 2019.

61.     In May 2019, Suhad Abraham represented to Plaintiff that she needed funds to renovate the Lone Acres Property and the 25917 Blascos Property in order to prepare them for sale.  Suhad Abraham requested that Plaintiff wire funds to her to pay for the renovations that were needed to sell those properties.  Plaintiff wired $45,000 to Suhad Abraham on May 19, 2019.

62.     In late May 2019, Plaintiff demanded that the Lone Acres Property be listed for sale immediately after the renovations to that property were finished.  Plaintiff wired $115,400 to Suhad Abraham on May 30, 2019 to pay for those renovations.

63.     From June 2019 through September 2019, Suhad Abraham repeatedly made representations to Plaintiff that the 25917 Blascos Property and the Lone Acres Property were being renovated.  Suhad Abraham also repeatedly represented to Plaintiff from June 2019 through September 2019 that the Lone Acres Property would be listed for sale immediately after the renovations to that property were completed and that the proceeds from the sale would be transmitted to Plaintiff.

64.     Suhad Abraham's representations to Plaintiff from June 2019 through September 2019 that the proceeds from the sale the Lone Acres Property would be sent to him were false when they were made, as she knew that Plaintiff would discover the fact that she withdrew $1.35 million in equity from the Lone Acres Property without his knowledge or consent at the close of the sale of the Lone Acres Property or shortly thereafter.

65.     Suhad Abraham knew that she could defraud Plaintiff by repeatedly requesting funds for renovations to the Lone Acres Property.  She knew Plaintiff would send those funds to her because he desperately wanted to sell the Lone Acres Property in order to recoup his investment and enable him to pay debts he owed to third parties.  Suhad Abraham also knew that Plaintiff did not travel to the United States frequently and could not actively monitor the renovations to any of the properties from Riyadh.

13

COMPLAINT

66.     Suhad Abraham also knew that she could conceal material facts from Plaintiff concerning the cost and progress of renovations to the Lone Acres Property and the 25917 Blascos Property from the outset of the COVID-19 pandemic in March 2020, which made it impossible for Plaintiff to travel to the United States to ascertain the status of renovations to those properties.

67.     Suhad Abraham has never accounted for the funds Plaintiff sent to her for renovations to the Lone Acres Property, the 25917 Blascos Property or the 26059 Blascos Property.  Plaintiff is informed and believes that Suhad Abraham misappropriated a substantial amount of the funds he sent to her for renovations to those properties and instead diverted those funds for personal use.

68.     Suhad Abraham has refused and continues to refuse to comply with Plaintiff's demands to return the funds he wired to her on August 2, 2017 for the purchase of five Jack in the Box franchises.  She has also failed and refused to sell the 26059 Blascos Property and transfer the funds from the sale of that property to Plaintiff.

69.     In May 2020, Suhad Abraham acknowledged during a conversation with two third parties that Plaintiff is the rightful owner of the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property.  Suhad Abraham stated during that conversation that she did not want to transfer title to those properties to Plaintiff and that Plaintiff could not compel her to do so because "his name isn't on [title to the properties]."

70.     On May 2, 2021, Suhad Abraham caused the Lone Acres Property to be publicly listed for sale at an asking price of $2.68 million.  She did so without Plaintiff's knowledge or consent.  The listing agent for the sale of the Lone Acres Property is Suhad Abraham's son Jasem Preston.  The listing for the sale of the Lone Acres Property is currently active.

71.     Plaintiff did not become aware of any of the following facts until January 2021 after he retained a private investigator to conduct an investigation concerning the fraud perpetrated upon him by Suhad Abraham:

a.     That Suhad Abraham purchased five Jack in the Box franchises from

14

Reynold W. Forsum in or around August 2017 using funds that Plaintiff wired to her on August 2, 2017.

b.       That Suhad Abraham and Samir Abraham formed limited liability companies known as S & S Coastal Foods, LLC, first in California and then in Delaware, as part of their scheme to defraud him and acquire eleven Jack in the Box Franchises using funds that are rightfully his.

c.       That Suhad Abraham withdrew $1.35 million in equity from the Lone Acres Property and the 25917 Blascos Property in February 2019 by way of a hard money loan that is secured by those properties without his consent in order to finance the purchase of six Jack in the Box franchises that are currently owned and operated by Defendant S & S Coastal Foods.

72.     Plaintiff had no reason to be aware of the facts listed above before he discovered them in January 2021 after he retained a private investigator to conduct an investigation concerning the fraud perpetrated upon him by Suhad Abraham and Samir Abraham.

**FIRST CAUSE OF ACTION**
**(Fraud – Against Defendant Suhad Abraham)**

73.     Plaintiff incorporates the allegations of paragraphs 1 through 72 as though fully set forth herein.

74.     As described in detail above, Suhad Abraham made numerous misrepresentations of fact to Plaintiff during the course of their romantic relationship, including the following:

a.       That Plaintiff should purchase the Lone Acres Property because it was a good investment and that she would assist Plaintiff with renovating and selling the Lone Acres Property shortly after Plaintiff purchased it.

b.       That Plaintiff should purchase the 26059 Blascos Property because it was a good investment and that she would assist Plaintiff with renovating and selling the 26059 Blascos Property shortly after Plaintiff purchased it.

c.       That Plaintiff was not eligible to own the Jack in the Box franchises that Defendant S & S Coastal Foods LLC eventually acquired because Plaintiff is not a United States

15

citizen and that Plaintiff should transfer title to the Lone Acres Property and the 26059 Blascos Property to her in order to facilitate the purchase of those franchises by enabling her to show Jack in the Box that she met the requirement that a purchaser of a franchise have a net worth of at least $1.5 million.

d.     That the $1,937,299 in funds that Plaintiff sent to her via wire transfer on August 2, 2017 would be used to purchase five Jack in the Box franchises that would be owned by Suhad Abraham in name only and would effectively be owned by Plaintiff.

e.     That she would draft a written agreement that memorialized the oral agreements she reached with Plaintiff that she would transfer title to the Lone Acres Property and the 26059 Blascos Property to Plaintiff after she purchased five Jack in the Box franchises, that Plaintiff was the rightful owner of those properties and would be the rightful owner of those Jack in the Box franchises, and that she would transfer title to those properties back to Plaintiff after the purchase of the Jack in the Box franchises.

f.     That the 25917 Blascos Property was a good investment, that it would be renovated and sold after Plaintiff wired funds to her to purchase it and she would send the profits from that sale to Plaintiff.

g.     That she would cause the 26059 Blascos Property to be listed for sale immediately after the close of escrow for the purchase of the 25917 Blascos Property and that she would transmit the proceeds from the sale of the 26059 Blascos Property to Plaintiff.

h.     That the funds Plaintiff sent to her for renovations to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property would be used for that purpose, that those properties would be listed for sale shortly those renovations were finished and that she would transmit the proceeds from those sales to Plaintiff.

75.     Suhad Abraham knew that the representations that are described in the paragraph immediately above were false when she made them.  Specifically, Suhad Abraham had no intention of assisting Plaintiff with renovating and selling the Lone Acres Property and the 26059 Blascos Property within a short time frame when she told Plaintiff she would do so.  Instead, she

COMPLAINT

induced Plaintiff to acquire those properties as part of her scheme to fraudulently induce him to transfer title to those properties to her.  In addition, Suhad Abraham had no intention of renovating and reselling the 25917 Blascos Property when she induced Plaintiff to wire funds to her for the purchase of the property.  Instead, she intended to withdraw equity in the Lone Acres Property and the 25917 Blascos Property to finance the purchase of six additional Jack in the Box franchises that would be owned and operated by Defendant S & S Coastal Foods.

76.     In addition, Suhad Abraham knew that the representation she made to Plaintiff that he was not eligible to own a Jack in the Box franchise was false when she made it.  Suhad Abraham made that statement in order to fraudulently induce Plaintiff to transfer $1,937,299 to her for the purpose of purchasing five Jack in the Box franchises and transferring ownership of those franchises to Defendant S & S Coastal Foods, an entity that Plaintiff was unaware of and had no ownership interest in.

77.     Suhad Abraham falsely represented that she would memorialize in writing the oral agreements she reached with Plaintiff concerning the temporary transfers of title to the Lone Acres Property and the 26059 Blascos Property to her and ownership of the five Jack in the Box franchises as part of her scheme to defraud Plaintiff.

78.     Suhad Abraham knew that the representations she made in May 2019 to Plaintiff that she needed a total of $159,400 in order to renovate the Lone Acres Property and the 25917 Blascos Property were false when she made them.  Suhad Abraham made those representations in order to fraudulently induce Plaintiff to transfer those funds to her with the intent of misappropriating those funds for personal use.

79.     Suhad Abraham intended to cause Plaintiff to rely upon the misrepresentations described above in order to fraudulently induce Plaintiff to transfer almost $2.1 million in cash to her as described above as well as title to the Lone Acres Property and the 26059 Blascos Property, and to consent to allow her to hold title to the 25917 Blascos Property in her name when it was repurchased until it was remodeled and resold.

80.     Plaintiff reasonably relied upon the misrepresentations made by Suhad Abraham in

making the decision to transfer almost $2.1 million in cash to her as well as title to the Lone Acres Property and the 26059 Blascos Property, as well as his decision to allow her to temporarily hold title to the 25917 Blascos Property when it was purchased.

81.     As a direct, substantial and foreseeable result of the misrepresentations made by Suhad Abraham, Plaintiff has been damaged in the amount of $4,344,299, plus the out of pocket expenses that Plaintiff has incurred and will incur in bringing this action to compel the return of the funds that were misappropriated from him and compelling Suhad Abraham to transfer all of her rights, interests and title to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property to him.

82.     Suhad Abraham's conduct in committing the acts described herein was fraudulent, malicious and oppressive and warrants an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## SECOND CAUSE OF ACTION
### (Fraudulent Concealment – Against Defendants Suhad Abraham, Samir Abraham and Realty One Group)

83.     Plaintiff incorporates the allegations of paragraphs 1 through 82 as though fully set forth herein.

84.     Defendant Suhad Abraham fraudulently concealed the following material facts from Plaintiff:

a.     That she had no intention of assisting Plaintiff with the renovations to and the resale of the Lone Acres Property to enable him to resell it shortly after Plaintiff purchased it. Instead, she intended to fraudulently induce Plaintiff to transfer the property to her as part of a scheme to defraud him.

b.     That she had no intention of assisting Plaintiff with the renovations to and the resale of the 26059 Blascos Property to enable him to resell it shortly after Plaintiff purchased it.  Instead, she intended to fraudulently induce Plaintiff to transfer the property to her as part of a scheme to defraud him.

c.     That Jack in the Box had no requirement that its franchises could only be

18

acquired by American citizens and that Plaintiff was therefore eligible to own a Jack in the Box franchise.

        d.      That she and Samir Abraham intended to use the $1,937,299 in funds that Plaintiff sent to her via wire transfer on August 2, 2017 to purchase five Jack in the Box franchises and that ownership of those franchises would be transferred to Defendant S & S Coastal Foods, LLC, a limited liability company that Plaintiff had no affiliation with and no ownership interest in.

        e.      That she had no intention of memorializing the agreements she reached with Plaintiff concerning the temporary transfer of title to the Lone Acres Property and the 26059 Blascos Property to her as well as ownership of the five Jack in the Box franchises, which was part of her scheme to defraud Plaintiff.

        f.      That she had no intention of renovating and selling the 25917 Blascos Property within a short time frame and instead intended to immediately draw equity out of that property and the Lone Acres Property by way of a hard money loan to fund the purchase of six additional Jack in the Box franchises by Defendant S & S Coastal Foods.

        g.      That she had no intention of using the $159,400 in funds Plaintiff transferred to her via two wire transfers in May 2019 to renovate and sell the Lone Acres Property and the 25917 Blascos Property and that those properties would be listed for sale shortly thereafter.

85.     In addition, when he spoke with Plaintiff in July 2017 and represented that the five Jack in the Box franchises that were owned by Reynold W. Forsum were a good investment, Samir Abraham fraudulently concealed the fact that he and Suhad Abraham intended to transfer ownership of those franchises after they were purchased to S & S Coastal Foods, LLC, a limited liability company that Plaintiff had no affiliation with and no ownership interest.

86.     Suhad Abraham and Realty One Group fraudulently concealed from Plaintiff the fact that they would be receiving a commission in connection with the purchase of the 25917 Blascos Property, as set forth in more detail below.

87.     Suhad Abraham, Samir Abraham and Realty One Group had a duty to disclose all of the facts described in paragraphs 86 above to Plaintiff and had the opportunity to do so before Plaintiff took the actions to facilitate the purchase of the three properties that are described above, transfer title to two of those properties to Suhad Abraham and wire almost $2.1 million to Suhad Abraham for the purchase of five Jack in the Box franchises as well as renovations to the Lone Acres Property and the 25917 Blascos Property.

88.     Plaintiff did not discover that Suhad Abraham fraudulently concealed the facts described above in order to induced him to transfer title to the Lone Acres Property and the 26059 Blascos Property to her and falsely claim that she is the rightful owner of those properties until January 2021 and had no reason to know of her intention to do so before then.

89.     Plaintiff did not discover that Defendant Suhad Abraham fraudulently concealed the facts described above in order to induce him to transfer funds to her for the purchase of the 25917 Blascos Property so that she could draw equity out of the property via a hard money loan and falsely claim that she was the rightful owner of that property until January 2021 and had no reason to know of her intention to do so before then.

90.     Plaintiff did not discover that Suhad Abraham and Samir Abraham fraudulently concealed the fact that they intended to transfer ownership the five Jack in the Box to S & S Coastal Foods, LLC after Suhad Abraham purchased those franchises using $1,937,299 in funds she obtained from Plaintiff by means of fraud until January 2021 and had no reason to know of their intention to do so before then.

91.     As a direct, substantial and foreseeable result of the fraudulent concealment of material facts described above by the Defendants, Plaintiff has been damaged in an amount that exceeds $4,344,299.

92.     Defendants' conduct in committing the acts described herein was fraudulent, malicious and oppressive and warrants an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### THIRD CAUSE OF ACTION
**(Aiding and Abetting Fraud – Against Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods)**

93.     Plaintiff incorporates the allegations of paragraphs 1 through 92 as though fully set forth herein.

94.     In July 2017, Suhad Abraham began discussing a business opportunity to purchase and operate five Jack in the Box franchises in Orange County with Plaintiff.  Suhad Abraham further represented to Plaintiff that each franchise would generate monthly profits of $10,000 beginning in October 2017.

95.     Suhad Abraham further represented to Plaintiff that Jack in the Box required that its franchises be owned and operated by a United States citizen and that Plaintiff therefore was not eligible to own and operate those franchises because he is not a United States citizen.  Suhad Abraham proposed to Plaintiff that he finance the purchase of the Jack in the Box franchises and that she would operate them.

96.     On July 28, 2017, Samir Abraham sent an email to Plaintiff by which he forwarded an unsigned draft of a letter of intent from Reynold W. Forsum to Suhad Abraham for the purchase of five Jack in the Box franchises in the amount of $1,937,299.  Later that day, Samir Abraham forwarded another version of that letter of intent on Jack in the Box's corporate letterhead with Reynold W. Forsum's signature.

97.     Plaintiff participated in a conference call with Suhad Abraham and Samir Abraham shortly after he received the letters of intent described above.  During that conversation, Samir Abraham encouraged Plaintiff to purchase the five Jack in the Box franchises that are the subject of the letters of intent.  Samir Abraham further stated during that conversation that he was in the restaurant industry and that the franchises were a good investment.

98.     Jack in the Box requires that purchasers of its franchises have a minimum net worth of $1.5 million and liquid capital of at least $750,000.  Suhad Abraham and Samir Abraham did not meet the minimum net worth or liquidity requirements imposed by Jack in the Box for the purchase of a franchise.  In July 2017, Suhad Abraham requested that Plaintiff

COMPLAINT

transfer title to the Lone Acres Property and the 26059 Blascos Property to her so that she could show Jack in the Box that she met the minimum required net worth and liquid capital requirements for the purchase of the five Jack in the Box franchises.

99.     Unbeknownst to Plaintiff, Samir Abraham and Suhad Abraham formed S & S Coastal Foods, LLC as a limited liability company under the laws of the state of California on July 17, 2017.  The only members of that entity were Samir Abraham and Suhad Abraham.

100.    S & S Coastal Foods was formed to own and operate the Jack in the Box franchises that Suhad Abraham and Samir Abraham discussed with Plaintiff in July and August 2017.  Samir Abraham and Suhad Abraham never made Plaintiff aware of the existence of S & S Coastal Foods, concealed its existence from him and used the company as part of their scheme to defraud Plaintiff.

101.    Samir Abraham conspired with Suhad Abraham to defraud Plaintiff by encouraging him to transfer over $1.9 million in funds for the purchase of the five Jack in the Box franchises at a time when he knew that Suhad Abraham would transfer ownership of the franchises to S & S Coastal Foods, an entity that he recently formed in California and had a 51% ownership interest in.

102.    In July 2017, Samir Abraham knew that Suhad Abraham intended to defraud Plaintiff by fraudulently inducing him to transfer title to the Lone Acres Property and the 26059 Blascos Property to her by falsely claiming that Plaintiff could not own the five Jack in the Box franchises because he was not a United States citizen.  Samir Abraham also knew that Suhad Abraham intended to withdraw equity out of the Lone Acres Property by way of a hard money loan secured by that property in order to fraudulently obtain additional funds to capitalize S & S Coastal Foods, finance its ongoing operations and purchase additional Jack in the Box Franchises. Samir Abraham had a duty to disclose these facts to Plaintiff in July 2017 when he spoke with him, failed to do so and intended to defraud Plaintiff by doing so.

103.    As a direct and proximate result of the acts of Defendants, Plaintiff has been damaged in an amount to be proven at trial that exceeds $4,344,299.

104.    The acts described herein were oppressive, malicious and fraudulent.  Plaintiff seeks an award of punitive damages against Defendants in an appropriate amount to punish and make an example of them and to deter such conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

**FOURTH CAUSE OF ACTION**
**(Conversion – Against Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods)**

105.    Plaintiff incorporates the allegations of paragraphs 1 through 104 as though fully set forth herein.

106.    Plaintiff is the rightful owner of the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property.  In addition, Plaintiff is the rightful owner of monies described above that were misappropriated by Defendants and diverted to bank accounts controlled by Defendants.

107.    Defendant Suhad Abraham wrongfully interfered with Plaintiff's ownership interest in the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property and wrongfully refuses to transfer title to those properties to Plaintiff.  Suhad Abraham also wrongfully interfered with Plaintiff's ownership interest in those properties by withdrawing equity from the Lone Acres Property and the 25917 Blascos Property by way of a hard money loan she obtained in the amount of $1.35 million without Plaintiff's knowledge or consent.

108.    Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods wrongfully interfered with the Plaintiff's interests in the above-described properties by misappropriating the funds Suhad Abraham obtained by way of the hard money loan described above, depositing those funds in bank accounts they maintain and refusing to return them to Plaintiff.

109.    Defendant Suhad Abraham further interfered with Plaintiff's interests in funds that he transferred to her for renovations to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property by misappropriating a substantial portion of those funds for her personal use and refusing to return them to Plaintiff.

110.    The aforementioned acts of Defendants were willful, wanton, malicious, and

23

oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages in the amount to be proven at trial that is no less than $4,344,299.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### FIFTH CAUSE OF ACTION
**(Breach of Fiduciary Duty – Against Defendants Suhad Abraham and Realty One Group)**

111.    Plaintiff incorporates the allegations of paragraphs 1 through 110 as though fully set forth herein.

112.    Suhad Abraham served as Plaintiff's real estate agent and Realty One Group served as Plaintiff's real estate broker in connection with the purchase of the 25917 Blascos Property.  Suhad Abraham and Realty One Group handled all aspects of that transaction on Plaintiff's behalf.

113.    Suhad Abraham and Realty One Group owed Plaintiff a fiduciary duty as his real estate agent and broker for the purchase of the 25917 Blascos Property, which imposed upon them a duty to act towards him in the highest good faith, an obligation of undivided faithful service and loyalty and a duty to disclose all information to Plaintiff that would affect his financial affairs and decisions in connection with that transaction.  They also owed Plaintiff a duty as his real estate agent and broker to disclose all material facts to him in connection with the purchase of the 25917 Blascos Property, including any compensation that they would receive from the sale of the property.

114.    Suhad Abraham and Realty One Group breached the fiduciary duty they owed to Plaintiff by structuring the purchase of the 25917 Blascos Property so that title to the property would be conveyed to Suhad Abraham rather than Plaintiff as part of Suhad Abraham's scheme to defraud him and claim that she is the rightful owner of the property.

115.    Suhad Abraham and Realty One Group further breached the fiduciary duty they owed to Plaintiff by failing to disclose the fact that Suhad Abraham intended to obtain a hard money loan secured in part by the 25917 Blascos Property shortly after the close of escrow for the purchase of that property.

COMPLAINT

116.    Suhad Abraham and Realty One Group also owed Plaintiff a duty as his real estate agent and broker to account for all monies they received in connection with the purchase of the 25917 Blascos Property.

117.    Suhad Abraham and Realty One Group structured Plaintiff's purchase of the Lone Acres Property and the 26059 Blascos Property so that they would receive a commission on those transactions.  Suhad Abraham never discussed with Plaintiff the fact that she and Realty One Group would receive a commission in connection with those transactions and never obtained his agreement or consent for payments of a commission.

118.     Plaintiff is therefore informed and believes that Suhad Abraham and Realty One Group received a commission in connection with the 25917 Blascos Property that they have never disclosed to Plaintiff in breach of the fiduciary duty they owed to him.  Plaintiff never agreed that Suhad Abraham or Realty One Group would receive a commission in connection with the purchase of the 25917 Blascos Property.

119.    As a direct, proximate and foreseeable result of the breach of the fiduciary duty Suhad Abraham and Realty One Group owed to Plaintiff, Plaintiff has suffered damages in an amount to be proven at trial.

120.    Suhad Abraham was acting as an employee and agent of Realty One Group at all times relevant herein in connection with the purchase of the 25917 Blascos Property.  Realty One Group is therefore liable for the acts of Suhad Abraham that are described in paragraphs 112 through 119 above pursuant to the doctrine of respondeat superior.

121.    The acts described herein were oppressive, malicious and fraudulent.  Plaintiff seeks actual damages in tort as well as an award of punitive damages in an amount appropriate to punish and make an example of Suhad Abraham and Realty One Group, and to deter such conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment – Against all Defendants)

122.    Plaintiff incorporates the allegations of paragraphs 1 through 121 as though fully set forth herein.

123.    Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods have been unjustly enriched by means of their acts of misappropriating funds from Plaintiff, a significant portion of which were used to fund the operations of Defendant S & S Coastal Foods and acquire the eleven Jack in the Box franchises that Defendant S & S Coastal Foods now owns and operates.

124.    Suhad Abraham has been unjustly enriched by her act of misappropriating funds directly and indirectly from Plaintiff by fraudulently inducing him to transfer funds to her for the purchases of five Jack in the Box Franchises and the 25917 Blascos Property as well as title to the Lone Acres Property and the 26059 Blascos Property, and by withdrawing $1.35 million in equity from the Lone Acres Property and the 25917 Blascos Property without Plaintiff's knowledge or consent.

125.    Defendants Suhad Abraham and Realty One Group have been unjustly enriched by their acts of receiving an undisclosed commission in connection with the purchase of the 25917 Blascos Property.

126.    Plaintiff has requested the return of the funds Defendants misappropriated from him and that Defendant Suhad Abraham transfer title to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property to him, but she has refused to return those funds and transfer title to those properties to him.  Defendants have been unjustly enriched as a result of their actions that are described in this complaint.

127.    As a direct and proximate result of the refusal by Defendants to return the monies they misappropriated from Plaintiff as well as the refusal by Suhad Abraham to transfer title to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property to Plaintiff, Plaintiff is entitled to restitution from Defendants as well as all profits Defendants derived from their acts of misappropriating funds from Plaintiff in an amount to be proven at trial.

COMPLAINT

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## SEVENTH CAUSE OF ACTION
### (For Money Had and Received – Against Defendant Suhad Abraham)

128.    Plaintiff incorporates the allegations of paragraphs 1 through 127 as though fully set forth herein.

129.    Defendant Suhad Abraham received monies that were intended to be used for Plaintiff's benefit, specifically:

a.    Suhad Abraham received $1,937,299 from Plaintiff on August 2, 2017 for the purpose of purchasing five Jack in the Box franchises that would effectively be owned by Plaintiff.

b.    Suhad Abraham received $423,000 from Plaintiff on January 10, 2019 for the purchase of the 25917 Blascos Property, which the parties agreed would be effectively owned by Plaintiff and resold within a short time frame.

c.    Suhad Abraham received $45,000 from Plaintiff on May 19, 2019 for purposes of renovating the 25917 Blascos Property and preparing it for sale.

d.    Suhad Abraham received $115,400 from Plaintiff on May 30, 2019 for purposes of renovating the Lone Acres Property and preparing it for sale.

e.    Suhad Abraham received additional funds in an amount to be determined for renovations to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property.

130.    The monies described above that Suhad Abraham received were not used for Plaintiff's benefit.

131.    Defendants have refused and continue to refuse to return the monies described above to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

COMPLAINT

**EIGHTH CAUSE OF ACTION**
**(Violation of California Business & Professions Code section 17200, *et seq*. – Against all Defendants)**

132.    Plaintiff incorporates the allegations of paragraphs 1 through 131 as though fully set forth herein.

133.    By committing the acts described herein, Defendants have committed business acts and practices that are "unlawful" and "unfair" in violation of the Unfair Competition Law that is codified in California Business & Professions Code section 17200, *et seq*.

134.    By misappropriating funds from Plaintiff that were to be used for the purchase of five Jack in the Box franchises that he would own, Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods have violated California Business & Professions Code section 17200, *et seq*.

135.    As a separate and unlawful business practice, Suhad Abraham fraudulently induced Plaintiff to transfer title to the Lone Acres Property and the 26059 Blascos Property to her by falsely representing to Plaintiff that he was not eligible to own the five Jack in the Box franchises that she purchased using funds she obtained from him by means of fraud.

136.    As a separate and unlawful business practice, Suhad Abraham acquired title to the 25917 Blascos Property by means of fraud and deceit.

137.    As a separate and unlawful business practice, Suhad Abraham and Realty One Group received an undisclosed commission in connection with the purchase of the 25917 Blascos Property.

138.    As a separate and unlawful business practice, Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods obtained $1.35 million in equity in the Lone Acres Property and 25917 Blascos Property by means of fraud and deceit in order to finance the purchase of an additional six Jack in the Box franchises that are now owned by Defendant S & S Coastal Foods, an entity that Plaintiff has no affiliation with and no ownership interest in.

139.    As a separate and unlawful business practice, Suhad Abraham misappropriated funds from Plaintiff that he sent to her for renovations to the Lone Acres Property, the 26059

COMPLAINT

Blascos Property and the 25917 Blascos Property in order to prepare them for sale.

140.    Plaintiff will be denied an effective and complete remedy absent the relief requested herein.

141.    Defendants have been unjustly enriched by their unlawful and unfair business practices described herein.  Plaintiff has suffered injury in fact and has lost money as a direct and proximate result of the unlawful and unfair business practices of Defendants.

142.    Plaintiff is entitled to restitution of all funds unlawfully gained by Defendants as a result of their unlawful and unfair business practices that are described herein.

143.    Plaintiff is also entitled to injunctive relief pursuant to California Business & Professions Code section 17203 by which Defendant Suhad Abraham and all those acting in concert or participating with her are enjoined from taking acts to transfer, assign, conceal, impair or otherwise dispose of any rights or interests in the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property, as well as all funds Defendants received from Plaintiff that are rightful property of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### NINTH CAUSE OF ACTION
**(Accounting – Against all Defendants)**

144.    Plaintiff incorporates the allegations of paragraphs 1 through 143 as though fully set forth herein.

145.    The exact amount of funds that Defendants misappropriated from Plaintiff and obtained through means of fraud and deceit as well as the amount of profits that Defendants have derived from those funds is currently unknown to Plaintiff and cannot be ascertained without an accounting for all such funds that were misappropriated and obtained by means of fraud and deceit.

146.    Plaintiff is therefore entitled to an accounting of all funds that Defendants misappropriated from him and obtained through means of fraud and deceit as well as all profits Defendants derived from those funds to the present.

29

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.      That the Court enter judgment against Defendant Suhad Abraham and a decree for specific performance requiring her to transfer all of her rights, interests and title to the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property to Plaintiff.

2.      For general damages sustained as a direct, proximate and foreseeable result of the wrongful conduct of Defendants in an amount according to proof that shall exceed $4,100,000.

3.      For an award of punitive damages for Defendants' malicious, oppressive and outrageous conduct in an amount according to proof that shall exceed $20,000,000.

4.      For restitution of funds by Defendants to Plaintiff consisting of the amount of the benefit Defendants received and have been unjustly retained in performing the wrongful acts complained of herein, including all profits received by Defendants from the wrongful use of monies they obtained from Plaintiff by means of fraud and deceit.

5.      For the appointment of a receiver to receive, manage and distribute all funds disgorged by Defendant S & S Coastal Foods and determined to have been wrongfully acquired by Defendants.

6.      For the issuance of a temporary and permanent injunction enjoining Defendant Suhad Abraham and all those acting in concert or participating with her from taking acts to transfer, assign, conceal or otherwise dispose of any rights or interests she has in the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property, as well as taking any actions to damage and/or impair the Lone Acres Property, the 26059 Blascos Property and the 25917 Blascos Property.

7.      For the issuance of a temporary and permanent injunction enjoining Defendants Suhad Abraham, Samir Abraham and S & S Coastal Foods and all those acting in concert or participating with them from taking acts to transfer, assign, conceal or otherwise dispose of any funds in their possession that are rightful property of Plaintiff as well as any profits they derived from the use of the funds and real property they misappropriated from Plaintiff.

30

COMPLAINT

8.      For equitable relief in the form of a constructive trust upon all real and personal property in the possession of Defendants that is the rightful property of Plaintiff as well as all profits derived from the use of funds and real property Defendants misappropriated from Plaintiff.

9.      For an accounting of all funds Defendants misappropriated from Plaintiff and obtained by means of fraud and deceit, as well as the profits Defendants derived from the use of those funds.

10.     For an award of prejudgment interest.

11.     For attorney's fees and costs of suit incurred herein; and

12.     For such other and further relief as the court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 30, 2021                    THE FORTRESS LAW FIRM, INC.

By:_____
        DAVID P. NEMECEK, JR.
        Attorneys for Plaintiff ABDULAZIZ AL MUNIFI

31

COMPLAINT